[Civ. No. 6862.  First Appellate District, Division One.—August 31, 1929.]

In the Matter of the Estate of ANTONIO IZEDORIO, Deceased.  ANNA I. SILVA, Administratrix, et al., Appellants, v. AMELIA BELLO et al., Respondents.

F. I. Lemos and C. W. White for Appellants.

Jo. Lawrence and Richard Liebman for Respondents.

DEASY, J., *pro tem.*—On the thirtieth day of October, 1909, Antonio Izedorio, resided with his wife and family in a dwelling-house situated upon a piece of real property in the city of Hayward. The property was community property, and on said date said Antonio Izedorio duly executed a declaration of homestead thereon, which was thereafter duly recorded in the office of the recorder of Alameda County, California. No abandonment of said homestead was ever made or recorded, and said real property belonged to said Antonio Izedorio and his wife as a homestead until her death, some time in 1925. Upon his wife's death said Antonio Izedorio became the successor to the homestead and the sole owner of the property. By appropriate proceedings the title was declared vested in him by the Superior Court, such proceedings having taken place after his death.

On the sixth day of December, 1927, said Antonio Izedorio died intestate, leaving as his heirs at law five children, all of whom were over the age of twenty-one years. The only estate left by said decedent was the piece of property above referred to.

On the twenty-third day of January, 1928, after due proceedings, one of his daughters, Anna I. Silva, was appointed administratrix of the estate of said decedent by order of the Superior Court of the county of Alameda, and thereafter she duly qualified and is still such administratrix. She caused notice to creditors to be given as required by law, and the following claims were presented and were allowed by the administratrix and by the court:

P. F. Kearny, M. D., services in last illness.......$  110.00
Manuel R. Silva, for care of deceased............ 1,080.00
Manuel R. Silva, board and lodging..............   300.00
Mary Correia, services as nurse.................    60.00
Lottie Vieira, services as nurse.................    12.00
Sorenson Bros., funeral expenses.................   285.70
Rev. J. Viladomat, funeral services..............    25.50

Making a total of..................$1,873.20

The administratrix received no money or personal property belonging to said estate, and in order to pay the

expenses of administration and the claims that had been filed, she sold the real property above referred to. All of the heirs at law of said decedent received notice of the proceedings relative to said sale, and none of them made any objection thereto. The sale was confirmed by the court and the sum of $3,400 was received by the administratrix. She thereafter filed her first and final account, which showed a balance in her hands of $1702.27, and also stated that none of the claims against the estate heretofore mentioned had been paid. With the account the administratrix filed a report asking that the court make an order for the payment of said claims, and she also filed a petition for distribution asking that the court make its order bringing the administration of said estate to a close, and discharging her as such administratrix.

Thereafter exceptions to said account were filed by Amelia Bello, Izedorio V. Izedorio, Manuel Izedorio and Mary Fernandez, the remaining four heirs at law of said decedent. The items excepted to were the sum of $190 paid for a monument, and all of the claims which had been presented. The principal ground of objection stated was that the whole of the property belonging to said estate was subject to a homestead exemption, by reason of the declaration of homestead made by said Antonio Izedorio on October 30, 1909.

The court heard the matter of the settlement of said final account and the exceptions thereto, and ordered the administratrix to pay the item of $190 for the monument, and the claim of Sorenson Bros. for funeral expenses amounting to $285.50, and the claim of Rev. J. Viladomat for funeral services amounting to $25.50.

Thereafter the administratrix filed a supplemental account showing that said amounts had been paid, and that there was a residue in her hands of $1391.07. Manuel R. Silva, one of the creditors also filed a petition asking for an order directing the administratrix to pay to him the amount of his two claims. To this petition the heirs at law, other than Anna I. Silva, filed written objections upon the ground that the property was subject to a homestead exemption as claimed in their exceptions to the account of the administratrix.

After a further hearing the trial court sustained the objections of the heirs, denied the prayer of the administratrix for a settlement of her account, denied the prayer of the petition of Manuel R. Silva, and directed that the balance of said estate in the hands of the administratrix, to wit, $1391.07, be divided share and share alike amongst the five heirs at law of said Antonio Izedorio. A decree of settlement of account and final distribution to that effect was subsequently entered by the Superior Court, and from that decree the administratrix and said Manuel R. Silva have appealed. Both appeals were argued and submitted as one because they involve the same points.

██ The question presented is, does the homestead exemption extend to the proceeds of the sale remaining after the expenses of administration and the funeral expenses had been paid? This question has not been directly passed upon by the courts of this state, but there are many well-settled principles of law that we can rely upon for its solution.

Had the property not been sold at probate sale, the heirs at law would have taken it free and clear of all claims and demands of creditors which arose prior to the death of the decedent. (*Estate of Fath,* 132 Cal. 609 [64 Pac. 995]; *Estate of Muntz,* 69 Cal. App. 404 [231 Pac. 371].) Appellants concede that these two cases correctly state the law, but they seek to distinguish them from the case at bar by reason of the sale of the property and its conversion into money. It is well settled that when the owner of real property dies intestate the title to the property vests immediately in his heirs, subject to administration. The property cannot be sold or disposed of, except the necessity should arise which would compel a sale to pay the expenses of administration and the claims of creditors. ██ In this case the record shows that it was necessary to sell the real property in order to pay the funeral expenses and the expenses of administration. The only power which the court had to confirm the sale arose out of that necessity. (*Estate of Packer,* 125 Cal. 396 [73 Am. St. Rep. 58, 58 Pac. 59].) If the real estate were not exempted as a homestead the proceeds of the sale could be used to pay any of the claims. But where the homestead exemption exists the heirs cannot be deprived of their vested rights in the real property to

pay any claims that arose prior to the death of the owner of the homestead. (Sec. 1265, Civ. Code; sec. 1485, Code Civ. Proc.) Therefore, after the funeral expenses and the expenses of administration have been paid out of the proceeds of the sale of a homestead, the balance. of funds in the hands of the administratrix should be considered, not as personal, but as real property, and in such case the heirs would be entitled to have it distributed to them. (*Estate of Hills,* 176 Cal. 232 [168 Pac. 20].)

Appellants contend, however, that under the provisions of section 1485 of the Code of Civil Procedure, the purchaser at the probate sale took the property free and clear of all debts and claims arising prior to the death of the decedent, and that, therefore, the proceeds of the sale were not exempt, and the heirs had no rights superior to those of the creditors.

There is neither principle nor authority to sustain this contention. The purpose of the homestead exemption is to protect the "family," or the "heirs" of the declarant, and that purpose would be defeated, and the evident intent of the law set aside, if the protection were denied to the heirs and extended to a stranger, merely because he became a purchaser at a probate sale.

For these reasons we conclude that the proceeds of the probate sale of the land in question in this case, after deducting the funeral expenses and the expenses of administration, were exempted from the claims of the other creditors by reason of the homestead declaration, and that the court correctly distributed the residue to the heirs of Antonio Izedorio, deceased.

Appellants make the further contention that by failing to object to the sale of the real property the heirs have waived such rights as they might otherwise have had under the provisions of section 1265 of the Civil Code and section 1485 of the Code of Civil Procedure. It seems to follow clearly, however, from what has already been said that no question of waiver can arise in this case. It was necessary to sell the real property in order to pay the funeral expenses and expenses of administration. Had the heirs objected, it would have availed them nothing, as the court was in duty bound to confirm the sale so that money could be obtained for these purposes. The heirs should cer-

tainly not be compelled to do a vain and idle act, under the penalty of forfeiting their vested rights to the property. The failure to object to the sale did not, therefore, constitute any waiver by them.

We do not find any error in the record, and the decree appealed from is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 30, 1929, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 28, 1929.

All the Justices present concurred.